**UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF FLORIDA**

ESTEBAN IVANOFF-TZVETCOFF,

   *Pro se* Plaintiff,

v.                                 **CASE NO. 19-24849-CIV-MARTINEZ/AOR**

BORINQUEN MEDICAL CENTER, et al.,

   Defendants.
_____/

OLANSHILE SHITTA-BEY,

   *Pro se* Plaintiff,

v.                                 **CASE NO. 19-24866-CIV-MARTINEZ/AOR**

BORINQUEN MEDICAL CENTER, et al.,

   Defendants.
_____/

**REPORT AND RECOMMENDATION
RE: MOTION FOR SUMMARY JUDGMENT**

THESE CONSOLIDATED CAUSES came before the Court upon Defendant Borinquen Medical Center's (hereafter, "Defendant" or "Borinquen") Motion for Final Summary Judgment [D.E. 86 in Case No. 19-24849]. This matter was referred to the undersigned pursuant to 28 U.S.C. § 636 by the Honorable Jose E. Martinez, United States District Judge [D.E. 54]. For the reasons stated below, the undersigned respectfully recommends that Defendant's Motion for Final Summary Judgment be GRANTED.

**PROCEDURAL BACKGROUND**

On November 22, 2018, Plaintiffs Esteban Ivanoff-Tzvetcoff ("Ivanoff-Tzvetcoff") and

Olanshile Shitta-Bey ("Shitta-Bey") (together, "Plaintiffs") filed respective Complaints against Borinquen and its employees Tatiana Posso ("Ms. Posso"), Paul Velez (Mr. Velez"), Deborah Gracia ("Dr. Garcia"), Diego Shmuels ("Dr. Shmuels"), and Joseph Durandis ("Dr. Durandis") (together, "Individual Defendants"), asserting claims pursuant to the Age Discrimination in Employment Act ("ADEA"), 29 U.S.C. § 623(a)(1), and the Florida Civil Rights Act ("FCRA"), Fla. Stat. § 760.10(1), based on the termination of their employment at Borinquen. See Complaint [D.E. 1 in Case No. 19-24849; D.E. 1 in Case No. 19-24866].[1] On December 2, 2019, Ivanoff-Tzvetcoff filed an Amended Complaint [D.E. 15 in Case No. 19-24849], which is identical to his original Complaint [D.E. 1], except for the addition of ¶ 44 and the omission of the exhibits previously attached at D.E. 1-2.[2] At a hearing held on June 16, 2020, the undersigned granted Individual Defendants' Partial Motion to Dismiss [D.E. 33 in Case No. 19-24849; D.E. 41 in Case No. 19-24866]; and dismissed with prejudice Plaintiffs' claims against all Individual Defendants pursuant to the ADEA and the FCRA. See Order [D.E. 91 in Case No. 19-24849; D.E. 103 in Case No. 19-24866].[3] As more fully discussed below, the undersigned concludes that Plaintiffs' remaining age discrimination claims against their former employer, Borinquen, fail as a matter of law.

---

[1] Plaintiffs also checked retaliation on their Complaint forms and alleged that they were retaliated against for voicing their "complaints, concerns, and disapproval of the way the program was conducted and questioning the way the finances were being mishandled"; and that, "in further retaliation for [their] concerns and complaints under the program directorship of Dr. Joseph Durandis," they were offered contracts with reduced salaries. See Complaint [D.E. 1-1 at 10, 12 in Case No. 19-24849; D.E. 1-2 at 9, 11 in Case No. 19-24866]. These allegations do not support a claim of retaliation for opposing age discrimination, as required to bring a retaliation claim under the ADEA, 29 U.S.C. § 623 (d). Moreover, although Plaintiffs checked Title VII of the Civil Rights Act in their Complaint forms, they only indicated age as the basis for their claims. See Complaint [D.E. 1 in Case No. 19-24849; D.E. 1 in Case No. 19-24866]. Therefore, as pled, Plaintiffs' claims are limited to employment discrimination based on age.

[2] In ¶ 44 of the Amended Complaint, Ivanoff-Tzvetcoff alleged that Dr. Durandis may have tampered with evidence by deleting some text messages that he had previously sent [D.E. 15 at 28 in Case No. 19-24849].

[3] It is well established that the ADEA and the FCRA only apply to employers. See Mason v. Stallings, 82 F.3d 1007 (11th Cir. 1996); Huck v. Mega Nursing Servs., 989 F. Supp. 1462 (S.D. Fla. 1997).

## **APPLICABLE LAW**

### *1.     Summary Judgment.*

Rule 56 of the Federal Rules of Civil Procedure (hereafter "Rule 56") states, "[t]he court shall grant summary judgment if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). A dispute is genuine "if the evidence is such that a reasonable jury could return a verdict for the nonmoving party." Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 248 (1986). "A fact is material if it 'might affect the outcome of the suit under the governing law.'" Fonseca v. Wal-Mart Stores, E., LP, No. 18-CV-62768, 2019 WL 7371813, at *2 (S.D. Fla. 2019) (quoting Anderson, 477 U.S. at 248). The party moving for summary judgment must support its assertion that there is no genuine dispute as to any material fact by "citing to particular parts of materials in the record, including depositions, documents, electronically stored information, affidavits or declarations, stipulations (including those made for purposes of the motion only), admissions, interrogatory answers, or other materials . . . ." Fed. R. Civ. P. 56(c)(1)(A). When determining whether a genuine issue of material fact exists, courts "view all evidence and draw all reasonable inferences in favor of the nonmoving party." Smith v. Royal Caribbean Cruises, Ltd., 620 F. App'x 727, 729 (11th Cir. 2015).

"After the movant has met its burden under Rule 56(a), the burden of production shifts and the nonmoving party 'must do more than simply show that there is some metaphysical doubt as to the material facts.'" Corbin v. Town of Palm Beach, No. 13-CV-80106, 2014 WL 866415, at *2 (S.D. Fla. 2014) (quoting Matsushita Elec. Indus. Co. v. Zenith Radio Corp., 475 U.S. 574, 586 (1986)). When asserting that a material fact is genuinely disputed, the nonmoving party must support its assertion by either complying with Rule 56(c)(1)(A) of the Federal Rules of Civil

Procedure cited above or by "showing that the materials cited do not establish the absence . . . of a genuine dispute . . . ." Fed. R. Civ. P. 56(c)(1)(A)–(B). "If the evidence advanced by the nonmoving party 'is merely colorable, or is not significantly probative, then summary judgment may be granted.'" Corbin, 2014 WL 866415, at *2 (quoting Anderson, 477 U.S. at 249-50). Additionally, "a mere scintilla of evidence in support of the nonmoving party's position is insufficient to defeat a motion for summary judgment." Sainz v. Cabarceno Enterprises, Inc., No. 14-CV-20608, 2015 WL 12551061, at *1 (S.D. Fla. 2015) (citing Anderson, 477 U.S. at 252).

Rule 56 further provides:

(e) Failing to Properly Support or Address a Fact. If a party fails to properly support an assertion of fact or fails to properly address another party's assertion of fact as required by Rule 56(c), the court may:

(1) give an opportunity to properly support or address the fact;

(2) consider the fact undisputed for purposes of the motion;

(3) grant summary judgment if the motion and supporting materials--including the facts considered undisputed--show that the movant is entitled to it; or

(4) issue any other appropriate order.

See Fed. R. Civ. P. 56(e). See also S.D. Fla. L.R. 56.1(c) ("All material facts in any party's Statement of Material Facts may be deemed admitted unless controverted by the other party's Statement of Material Facts, provided that: (i) the Court finds that the material fact at issue is supported by properly cited record evidence; and (ii) any exception under Fed. R. Civ. P. 56 does not apply.").

### 2. *ADEA and FCRA Claims.*

The ADEA and the FCRA prohibit employment discrimination against individuals aged forty years and older on account of their age. 29 U.S.C. § 623(a)(1); Fla. Stat. § 760.10(1). Federal case law interpreting the ADEA applies equally to FCRA age discrimination claims. See Van

Voorhis v. Hillsborough County Bd. of County Comm'rs, 512 F.3d 1296, 1300 (11th Cir. 2008); Zaben v. Air Prods. & Chems., Inc., 129 F.3d 1453, 1455 n. 2 (11th Cir. 1997); Sunbeam Television Corp. v. Mitzel, 83 So. 3d 865, 870, n. 3 and 4 (Fla. 3d Dist. App. 2012). Age discrimination claims are subject to the traditional burden shifting standard generally applicable to employment discrimination case: first, the plaintiff must establish a prima facie case of discrimination; second, the employer must respond with a legitimate, nondiscriminatory reason for its actions, at which point the presumption of discrimination drops from the case; and third, the claimant must establish that the employer's articulated reason was a pretext to mask unlawful discrimination in order to prevail. See Chapman v. Al Transp., 229 F. 3d 1012, 1024 (11th Cir. 2000). The employer's burden of articulating one or more legitimate, non-discriminatory reasons for the employment decision is "exceedingly light". See Perryman v. Johnson Prods. Co., 698 F.2d 1138, 1142 (11th Cir. 1993). Once the employer meets this burden, the plaintiff must identify specific record evidence competent to "prove by a preponderance of the evidence that the legitimate reasons offered by the defendant were not its true reasons, but were a pretext for discrimination." See Texas Dep't of Cmty. Affairs v. Burdine, 450 U.S. 248, 253 (1981). "If the plaintiff does not proffer sufficient evidence to create a genuine issue of material fact regarding whether each of the defendant employer's articulated reasons is pretextual, the employer is entitled to summary judgment." Chapman, 229 F.3d at 1024.

## RELEVANT UNDISPUTED MATERIAL FACTS

While temporarily represented by counsel, Plaintiffs responded to the Motion for Final Summary Judgment by seeking leave to file amended pleadings that dropped the age discrimination claims. See Response to Motion for Summary Judgment [D.E. 100 in Case No. 19-24849; D.E. 112 in Case No. 19-24866]. After returning to *pro se* status, Plaintiffs filed Notices

to Strike these initial responses. [D.E. 119 in Case No. 19-24849; D.E. 129 in Case No. 19-24866]. Plaintiffs also filed new responses to the Motion for Final Summary Judgment. See Response to Motion for Summary Judgment (hereafter, "Second Response") [D.E. 103 in Case No. 19-24849; D.E. 118 in Case No. 19-24866]. In their Second Response, Plaintiffs disputed several entries in Defendant's Statement of Material Facts by contending that they were based on false deposition testimony or falsified documentation.[4] However, other than these bare "lying" and "falsification" accusations, Plaintiffs' Second Response fails to dispute the relevant facts brought forth by Defendant in opposition to Plaintiffs' age discrimination claims.

Accordingly, having reviewed Defendant's Statement of Material Facts, Plaintiffs' Second Response, and the record evidence, the undersigned adopts the following as the Relevant Undisputed Material Facts. See Statement of Material Facts [D.E. 86-1 in Case No. 19-24849; D.E. 95 at 1-7 in Case No. 19-24866]; Fed. R. Civ. P. 56(e)(2); S.D. Fla. L.R. 56.1(c).

1. Borinquen is a federally qualified health care center and non-profit, devoted to serving the needs of Florida's medically underserved communities. As a federally qualified health center, Borinquen provides comprehensive primary and preventative care, regardless of a patients' ability to pay or health insurance status.

2. On August 27, 2018, Plaintiffs were hired by Borinquen to work as medical residents in the very first year of Borinquen's Family Medicine residency program. The new program had four residents: Ivanoff-Tzvetcoff (aged 43), Shitta-Bey (aged 45), Evalina Todd ("Todd") (aged 48), and Jose Patino ("Patino") (aged 46). The family medicine residency program was slated to be a three-year term. All four individuals, including Plaintiffs,

---

[4] Plaintiffs have also filed a Motion for Sanctions predicated on this contention. See Plaintiffs' Motion for Sanctions [D.E. 112 in Case No. 19-24849; D.E. 130 in Case No. 19-24866]. The undersigned addresses Plaintiffs' Motion for Sanctions separately.

signed first-year contracts for the specific duration of August 27, 2018 to August 28, 2019, coinciding with the academic year.

3. Residency is a stage of graduate medical education intended to provide in-depth training within a specific branch of medicine as an institutional apprenticeship.

4. Soon after Plaintiffs were hired as residents, they disagreed with how the program was run and complained about how Borinquen spent its funds and resources.

5. Plaintiffs alleged in their Complaints that on May 16, 2019, Dr. Gracia told them that Borinquen was prepared to terminate them because of their complaints and poor attitude. According to Plaintiffs, Dr. Gracia speculated that they "would not be able to find a residency training program again because of [their] ages." Plaintiffs accused Dr. Shmuels and Dr. Gracia of again threatening their termination on May 31, 2019 because of their complaints and of remarking once again that they could not get into another residency program because of their ages.

6. Plaintiffs also accused Dr. Durandis of stating that the residents were "lucky" to have found this residency program because they were "old graduates" on June 10, 2019. According to Plaintiffs, shortly after a meeting on August 29, 2019, Dr. Durandis advised them to accept a future salary reduction and other conditions that they did not like because Plaintiffs were "old graduates."

7. On September 13, 2019, Borinquen and its personnel extended to Plaintiffs, Todd and Patino employment contracts for their second year.

8. Plaintiffs were offered the same contracts as their fellow residents for the second year.

9. The terms of the contract for the second year differed from the terms of the contract for the first year. Although the four residents earned $54,000 in their first year, the new second-

year contract reduced those salaries to $33,000. At the end of the first year of Borinquen's Family Medicine Residency programs, administrators realized that they were not receiving enough grant money to sustain residents' salaries at $54,000. As a result, Borinquen reduced salaries across the board for all the residents who had begun in 2018, and sent them contracts offering a salary of $33,000 a year. Borinquen decided to offer incoming residents $31,000 annually as their first year's pay.

10. The contracts also had a new non-compete and confidentiality agreement, and vacation days were cut because the residents were behind educationally.

11. Todd and Patino signed contracts to continue in the residency program.

12. Four residents started working in the Borinquen Family Medicine Program in 2019, and another four residents started in 2020. These two groups of residents signed contracts with a starting annual salary of $31,000.

13. Plaintiffs did not sign and deliver their contracts by the time that Borinquen had requested the returned, signed contracts. Borinquen, as is typical for the medical industry, requires all medical providers to be under contract. After Plaintiffs' first year contracts had expired, they did not sign their second-year contracts but instead acted as if they would like to negotiate their contracts.

14. Borinquen did not want to negotiate the residents' contracts nor grant Plaintiffs financial and other concessions and management authority that were inconsistent with the program and that were not being provided to the other residents. As a result, Borinquen terminated Plaintiffs.

15. Plaintiffs appealed the termination decisions. Following that appeal, Borinquen offered the same contracts to Plaintiffs for a second time.

16. Plaintiffs never returned the signed and executed contracts to Borinquen.

17. Plaintiffs' evidence in support of their claims for age discrimination consists of (1) their belief that they were replaced by younger individuals, and (2) their allegations that, on several occasions, Dr. Gracia, Dr. Shmuels, and Dr. Durandis stated that if Plaintiffs were fired, they could not find a residency training program because of their ages; or, that they were lucky to have their positions at Borinquen because of their ages.

18. Other than the alleged comments made by Dr. Durandis, Dr. Gracia, and Dr. Shmuels, Plaintiffs have no proof that they were discriminated against based on their ages.

## DISCUSSION

In its Motion for Final Summary Judgment, Borinquen argues that (1) Plaintiffs cannot establish a prima facie case of age discrimination; and (2) even if Plaintiffs had established a prima facie case, Borinquen has articulated a legitimate non-discriminatory reasons for its treatment of Plaintiffs, and Plaintiffs have not demonstrated any evidence of pretext. See Defendant's Motion for Final Summary Judgment [D.E. 86 at 5-6]. The undersigned will address these arguments in turn.

**A. Whether Plaintiffs have established a prima facie case of age discrimination.**

Plaintiffs may establish a prima facie case of age discrimination in three ways: (1) by offering direct evidence of discriminatory intent; (2) by providing circumstantial evidence as outlined in McDonnell Douglas Corp. v. Green, 411 U.S. 792, 93 (1973); or (3) by establishing a pattern of discrimination through statistical proof. Carlson v. WPLG/TV-10, Post-Newsweek Stations of Fla., 956 F. Supp. 994, 999 (S.D. Fla. 1996). Here, Plaintiffs have not provided any statistical proof to support a pattern of discrimination. Therefore, the undersigned need only address the potential prima facie case based on direct and circumstantial evidence.

It is undisputed that the only evidence Plaintiffs present for their claims of age discrimination is (1) alleged comments made by faculty members about their ages, and (2) their belief that they were replaced by younger individuals. See Amended Complaint [D.E. 15 at 13, 15-16, 20, 27 in Case No. 19-24849]; see Complaint [D.E. 1-2 at 7-9, 12, 18 in Case No. 19-24866].

### (1) Direct Evidence

"Direct evidence of discrimination is evidence which, if believed, would prove the existence of a fact in issue without inference or presumption." Bass v. Board of County Comm'rs, Orange County, Florida, 256 F.3d 1095, 1105 (11th Cir. 2001) (quotations, alterations, and citations omitted). Here, Plaintiffs allege that Dr. Gracia and Dr. Shmuels stated that if Plaintiffs were fired from Borinquen, they could not get into different residency training programs because of their ages, and that Dr. Durandis stated that Plaintiffs were lucky to be in the Borinquen residency program because of their ages. See Amended Complaint [D.E. 15 at 13, 15-16, 20, 27 in Case No. 19-24849]; Complaint [D.E. 1-2 at 7-9, 12, 18 in Case No. 19-24866]. However, "only the most blatant remarks, whose intent could be nothing other than to discriminate on the basis of [a protected characteristic] constitute direct evidence of discrimination." Bass, 256 F.3d at 1105. Indeed, not all comments relating to a plaintiff's age constitute direct evidence of age discrimination by an employer. Carlson, 956 F. Supp. at 1000. ("For a comment to demonstrate discriminatory intent, it must be blatant, and one whose intent could be nothing other than to discriminate on the basis of age . . . ."). For example, the Eleventh Circuit has found that a comment that the employer did not think a guard could pass a physical at his age was not direct evidence of discriminatory intent. Barnes v. Sw. Forest Indus., Inc., 814

F.2d 607, 611 (11th Cir. 1987). Like the remarks in Barnes, the Borinquen faculty members' alleged comments do not constitute direct evidence of age discrimination because they were not blatant remarks "whose intent could be nothing other than to discriminate on the basis of age." Carlson, 956 F. Supp. at 1000.

### (2) Circumstantial Evidence

Plaintiffs may also establish a prima facie case of age discrimination by meeting the McDonnell Douglas circumstantial evidence test, which requires a showing that: (1) Plaintiffs are members of the protected group, namely, individuals between the ages of 40 and 70; (2) an adverse employment action was taken against Plaintiffs, such as demotion or discharge; (3) Plaintiffs were replaced by a person outside the protected group; and (4) Plaintiffs were qualified for the position from which they were demoted or discharged. Carlson, 956 F. Supp. at 1000.

It is undisputed that Plaintiffs satisfy the first prong, given that they were over 40 years old at the time they started their residency at Borinquen.

Plaintiffs have also alleged that they were offered second-year resident contracts with substantially less advantageous terms than their previous first-year resident contracts, and that when they refused to sign the second-year resident contracts, they were terminated from the residency program. See Amended Complaint [D.E. 15 at 19, 25-26 in Case No. 19-24849]; see Complaint [D.E. 1-2 at 17 in Case No. 19-24866]. This allegation satisfies the second prong of the McDonnell Douglas test.

As to the third prong, Plaintiffs allege that Dr. Durandis hired younger residents for the incoming first-year residency positions. See Amended Complaint [D.E. 15 at 27 in Case No. 19-24849]; see Complaint [D.E. 1-2 at 18 in Case No. 19-24866]. However, there is no evidence that the incoming first-year residents replaced Plaintiffs; rather, the program continued with Todd and

11

Patino, the two second-year residents who had signed their contracts. The Eleventh Circuit has held that a failure to "precisely" meet the standard of replacement with a person outside the protected class means that a plaintiff cannot establish a prima facie case of discriminatory discharge. Connelly v. Metro. Atlanta Rapid Transit Auth., 764 F.3d 1358, 1364 (11th Cir. 2014) (where the employer left the plaintiff's position vacant for a year and a half after he was terminated, the plaintiff was unable to make a prima facie case of discriminatory discharge under the McConnel Douglas test). Therefore, Plaintiffs do not meet the third prong of the McDonnell Douglas test.

As to the fourth prong, because Plaintiffs refused to sign the second-year contracts, they were not qualified for the position of second-year residents because it is undisputed that Borinquen, as is typical for the medical industry, required all medical providers to be under contract.

Based on the foregoing, the undersigned concludes that Plaintiffs have failed to establish a prima facie case of age discrimination.

**B. Whether Borinquen has articulated non-discriminatory reasons for their employment actions taken against Plaintiffs, which Plaintiffs have not refuted.**

Assuming, *arguendo*, that Plaintiffs have established a prima facie case, the undersigned further concludes that Borinquen has articulated legitimate non-discriminatory reasons for their treatment of Plaintiffs, and that Plaintiffs have not demonstrated any evidence of pretext.

Borinquen explained that, due to financial issues, it offered identical second-year contracts with reduced salary and benefits, including non-compete and confidentiality agreements, to all of the residents in Plaintiffs' class; and that Borinquen offered all incoming first-year residents lower salaries than what were offered to Plaintiffs in their second-year contracts. Borinquen further explained that all medical providers at Borinquen had to be under contract; and that, because

Plaintiffs' first-year contracts were only for a one-year term, when Plaintiffs refused to sign their second-year contracts, they no longer had contracts supporting their professional relationship with Borinquen, which resulted in their termination.

Because Borinquen has offered a legitimate, non-discriminatory reason for terminating Plaintiffs, the burden shifts back to Plaintiffs to "prove by a preponderance of the evidence that the legitimate reasons offered by the defendant were not its true reasons, but were a pretext for discrimination." Burdine, 450 U.S. at 253.

As noted above, Plaintiffs contend that Borinquen has proffered false testimony and falsified documentation; however, Plaintiffs have wholly failed to present evidence that creates a genuine issue of material fact regarding whether Borinquen's articulated reasons were pretextual. See Second Response [D.E. 103 in Case No. 19-24849; D.E. 118 in Case No. 19-24866]. Therefore, Plaintiffs have failed to meet their burden. Burdine, 450 U.S. at 253.

In light of the foregoing, the undersigned concludes that Borinquen is entitled to summary judgment as to Plaintiffs' age discrimination claims. See Chapman, 229 F.3d at 1024 ("If the plaintiff does not proffer sufficient evidence to create a genuine issue of material fact regarding whether each of the defendant employer's articulated reasons is pretextual, the employer is entitled to summary judgment.").

## RECOMMENDATION

Based on the foregoing considerations, the undersigned **RESPECTFULLY RECOMMENDS** that Defendant's Motion for Final Summary Judgment [D.E. 86 in Case No. 19-24849] be **GRANTED**.

Pursuant to Local Magistrate Judge Rule 4(b), the parties have **fourteen days** from the date of this Report and Recommendation to file written objections, if any, with the Honorable Jose E.

Martinez. Failure to timely file objections shall bar the parties from attacking on appeal the factual findings contained herein. See Resolution Tr. Corp. v. Hallmark Builders, Inc., 996 F.2d 1144, 1149 (11th Cir. 1993). Further, "failure to object in accordance with the provisions of [28 U.S.C.] § 636(b)(1) waives the right to challenge on appeal the district court's order based on unobjected-to factual and legal conclusions." See 11th Cir. R. 3-1 (I.O.P. - 3).

RESPECTFULLY SUBMITTED in Chambers at Miami, Florida, this 24th day of February, 2021.

                                            ALICIA M. OTAZO-REYES
                                            UNITED STATES MAGISTRATE JUDGE

cc:    United States District Judge Jose E. Martinez
        Counsel of Record